UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Gregory Semack, *et al.*,

                Plaintiffs,      Case No. 24-11935

v.                                    Judith E. Levy
                                        United States District Judge

County of Roscommon, *et al.*,

                                        Mag. Judge Patricia T. Morris

                Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [32], DISMISSING THE AMENDED COMPLAINT WITHOUT PREJUDICE [22], DENYING AS MOOT MICHIGAN ATTORNEY GENERAL'S MOTION TO INTERVENE [25], AND DENYING AS MOOT AND FUTILE PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT [27]**

Before the Court is the Michigan Attorney General's motion to intervene (ECF No. 25), Plaintiffs' motion for leave to file a second amended complaint (ECF No. 27), and Defendants' motion to dismiss. (ECF No. 32.)

For the reasons set forth below, Defendants' motion to dismiss is granted and this case is dismissed without prejudice. The Michigan Attorney General's motion to intervene is denied as moot and Plaintiff's

motion for leave to file a second amended complaint is denied as moot and futile.

## I. Background

Plaintiffs Gregory Semack, Bruce Carleton, and Charles Wayne Brooks own property on Higgins Lake. (ECF No. 22, PageID.316–317.) Defendants are Roscommon County and Chase Schepke, the Roscommon County Drain Commissioner, who is being sued in his official and individual capacity. (*Id.* at PageID.317.)

### A. Part 307 of Michigan's National Resources and Environmental Protection Act

Part 307 of Michigan's Natural Resources and Environmental Protection Act sets forth the process of establishing an inland lake water "Normal Level." Mich. Comp. Laws § 324.30701, *et seq*. The process for determining the Normal Level for an inland lake can be initiated by either the county board or a petition to the county board consisting of two-thirds of the owners of land abutting the lake. Mich. Comp. Laws § 324.30702(1). The determination of a Normal Level is made by a state court, which sets a hearing. Mich. Comp. Laws § 324.30707(1). Once the day for a hearing is set, notice is required. An attorney for the county is required to publish notice in at least one newspaper in the county for

2

three successive weeks before the date of the hearing. *Id.* § 324.30707(1); (ECF No. 22, PageID.318.) The county's Drain Commissioner (or the Board of County Road Commissioners) must serve notice of the hearing by first-class mail at least three weeks prior to the date of the hearing to each person whose name appears in the latest tax assessment roll as owning land within the proposed district. Mich. Comp. Laws 324.30707(2); (ECF No. 22, PageID.318.)

> Part 307 originally defined Normal Level as:
>
> the level or levels of the water of an inland lake that provide the most benefit to the public; that best protect the public health, safety, and welfare; that best preserve the natural resources of the state; and that best preserve and protect the value of property around the lake. A normal level shall be measured and described as an elevation based on national geodetic vertical datum.

*Citizens for Higgins Lake Legal Levels v. Roscommon Cnty. Bd. of Commissioners*, 341 Mich. App. 161, 179 (2022) (citing Mich. Comp. Laws § 324.30701(h)). In its determination of the "Normal Level," the state court must consider the following:

> (a) Past lake level records, including the ordinary high-water mark and seasonal fluctuations.
>
> (b) The location of septic tanks, drain fields, sea walls, docks, and other pertinent physical features.
>
> (c) Government surveys and reports.

>    (d) The hydrology of the watershed.
>
>    (e) Downstream flow requirements and impacts on downstream riparians.
>
>    (f) Fisheries and wildlife habitat protection and enhancement.
>
>    (g) Upstream drainage.
>
>    (h) Rights of riparians.
>
>    (i) Testimony and evidence offered by all interested persons.
>
>    (j) Other pertinent facts and circumstances.

Mich. Comp. Laws § 324.30707(4). The state court may determine that the Normal Level can vary seasonally. If a court-determined Normal Level is established, the county's delegated authority must maintain that level. Mich. Comp. Laws § 324.30702(3).

### B.  Higgins Lake

On February 24, 1982, Judge Horn of the Roscommon County Circuit Court followed the procedure set forth in Part 307 and determined that the normal level of Higgins Lake is 1,154.11 feet above mean sea level. He also determined a winter level (between Nov. 1 and April 15 of each year) of no less than 1,153.61 feet. (ECF No. 22-1, PageID.330.)

Plaintiffs allege that, after issues with a dam in 2007, Roscommon County "regularly and systematically failed" to keep Higgins Lake at the Normal Level, especially during the summer. (ECF No. 22, PageID.320.)

4

This resulted in a lawsuit filed in 2019, *Citizens for Higgins Lake Legal Levels v. Board of Commissioners of the County of Roscommon*, 19-724711-AW (Roscommon County Circuit Court, May 7, 2024) ("*CHLLL*"). The *CHLLL* plaintiffs sought a writ of mandamus ordering the defendant to maintain the lake level in accordance with their duties and to use certain maintenance practices that the plaintiffs believed would be more effective. *CHLLL*, 341 Mich. App. 161, 168–69 (2022).

On June 23, 2020, Judge Robert Bennet of the Roscommon County Circuit Court granted summary judgment to the defendant and dismissed the case. *CHLLL*, 2020 WL 13252128, at *1 (Mich. Cir. Ct. June 23, 2020). Nearly two years later, that order was affirmed in part and reversed in part and remanded for further proceedings by the Michigan Court of Appeals. *CHLLL*, 341 Mich. App. 161 (2022). The Court of Appeals held that, in accordance with Part 307, "once a court has determined the 'normal level' of an inland lake, it 'shall' be maintained at that 'normal level' by the responsible authority" and that Part 307 "does not explicitly allow for deviations." *Id.* at 182–83 ("The 1982 court order sets the legal levels and no explicit deviation or fluctuation was permitted."); (ECF No. 22, PageID.321.)

5

### C.    Passage of Public Act 112 of 2024

Plaintiffs allege that "[c]ertain officials with Defendant County of Roscommon were unhappy with being required to comply with Part 307 and the 1982 Legal Lake Level Order and took steps to get the Michigan Legislature to amend Part 307 to try to conform to their desire of unfaithful lake level maintenance." (ECF No. 22, PageID.321.) Plaintiffs believe that the culmination of those efforts was the passage of Public Act 112 on July 23, 2024. (*Id.*)

Public Act 112 changed portions of Part 307. As relevant here, Public Act 112 alters the definition of "Normal Level," which is now defined as:

> the target level or levels of the water of an inland lake, around which actual levels may fluctuate, that provide the most benefit to the public; that best protect the public health, safety, and welfare; that best preserve the natural resources of this state; and that best preserve and protect the value of property around the inland lake. A normal level shall be measured and described as an elevation or elevations based on a geodetic vertical datum including ranges based on tolerance, operational or weather conditions, seasonality, or other similar natural and regional considerations. An inland lake shall be considered to be maintained at its normal level during temporary water level fluctuations resulting from weather or natural events, during construction activities authorized by the department, or if a county or its delegated authority operates lake level infrastructure in a manner that may affect water levels but is

6

reasonably intended to maintain a normal level. The application of this definition includes, but is not limited to, all normal levels established before the effective date of the amendatory act of the 2023-2024 legislative session that amended this section.

Mich. Comp. Laws § 324.30701(i). Importantly, the new definition of "Normal Level" permits fluctuations from the water level set by the state court, and explicitly applies to all Normal Levels set by state courts prior to the change in law. Public Act 112 went into effect on April 2, 2025.

Plaintiffs allege that the alteration of Part 307's definition of "Normal Level" by Public Act 112 "effectively attempts to alter the 1982 Legal Lake Level Order by retroactive legislation thereby depriving local riparians of their legitimate claim of entitlement and/or property rights with no due process provided." (ECF No. 22, PageID.323.) They argue that they were entitled to a hearing prior to the change in the definition of Normal Level. (*Id.* at PageID.325–326.) Plaintiffs seek a declaratory judgment "declaring the challenged portions of Public Act 112 of 2024 as violating due process and are void," injunctive relief "to halt the violations of due process," and nominal damages. (*Id.* at PageID.327.)

### D. Procedural History

Plaintiffs filed the complaint on July 28, 2024, and originally named as Defendants Schepke Consulting, LLC and Chase Schepke, in both

7

their official and personal capacities. (ECF No. 1.) On August 15, 2024, Plaintiffs submitted an ex parte motion for order of certification and notice of constitutional question pursuant to 28 U.S.C. § 2403(b). (ECF No. 5.)

The Court held a status conference on February 27, 2025. During the status conference, Plaintiffs' oral motion to amend the complaint was granted, and the State of Michigan or the Michigan Attorney General was directed to file a motion to intervene. Plaintiffs filed the amended complaint that same day. (ECF No. 22.) On March 7, 2025, the Michigan Attorney General filed a timely motion to intervene (ECF No. 25), and Plaintiff filed a motion for leave to file a second amended complaint. (ECF No. 27.) Finally, Defendants Roscommon County and Chase Schepke filed a motion to dismiss. (ECF No. 32.) Briefing is complete for all pending motions. (*See* ECF Nos. 25, 26, 27, 29, 30, 32, 34, 35.)

## II. Analysis

Defendants assert that Plaintiffs' amended complaint must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 32.) For the reasons

8

set forth below, Plaintiffs' amended complaint is dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Here, Defendants challenge Plaintiffs' Article III standing to bring suit. This is a facial challenge to subject-matter jurisdiction.[1]

"Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Subject-matter jurisdiction requires a demonstration that the plaintiff has constitutional standing to bring suit.

---

[1] Plaintiffs appear to argue that Defendants' standing argument is improperly brought as a subject matter jurisdiction issue. (ECF No. 34, PageID.599–600 ("There is clear subject matter jurisdiction. What the County Defendants actually argue is a lack of standing (not a lack of subject matter jurisdiction) because, in their view, Plaintiffs have no injury.").) This is wrong. As set forth by the Sixth Circuit, issues of standing are "considered an attack on the court's subject-matter jurisdiction under Rule 12(b)(1)." *Allstate Ins. Co. v. Glob. Med. Billing, Inc.*, 520 F. App'x 409, 410–11 (6th Cir. 2013).

9

*Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606 (6th Cir. 2007). If a plaintiff cannot demonstrate constitutional standing, the case must be dismissed. *Id.* at 607 (citing *Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck–Medco Managed Care*, 433 F.3d 181, 198 (2d Cir. 2005)).

In order to demonstrate standing pursuant to Article III of the Constitution, Plaintiffs must demonstrate: (1) that each plaintiff has suffered "an invasion of a legally protected interest, which is concrete and particularized . . . and . . . actual or imminent"; (2) that the injury is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) that a favorable decision must be likely to redress that injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations omitted) (alteration in original). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). As such, each Plaintiff must demonstrate standing for all three forms of requested relief: declaratory relief, injunctive relief, and (nominal) damages. (ECF No. 22, PageID.327.) Finally, "[s]tanding is

10

determined at the time the complaint is filed." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 580 (6th Cir. 2012).

### A. Plaintiffs do not assert an injury-in-fact

Defendants argue that Plaintiffs do not have standing because they lack an injury-in-fact, as Plaintiffs' injury is speculative and not concrete. (ECF No. 32, PageID.464.) Plaintiffs respond that their injury is the "[d]eprivation of a protected interest without proper pre-deprivation process" (ECF No. 34, PageID.600 (citing *Brody v. Village of Port Chester*, 345 F.3d 103, 121 (2d Cir. 2003))), and argue that "any 'denial of procedural due process' is 'actionable' even 'without proof of actual injury.'" (*Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 266 (1978)).) The "protected interest" Plaintiffs are allegedly deprived of is "the legally established and mandated lake levels of Higgins Lake." (ECF No. 34, PageID.600.)

Plaintiffs must allege "an injury that is both 'concrete *and* particularized.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–181 (2000)). A particularized injury affects the plaintiff "in a personal and individual way." *Id.* at 339 (quoting *Lujan*, 504 U.S.

11

at 560 n.1). For an injury to be concrete, "it must actually exist." *Id.* at 340.

Further, deprivation of a due process right cannot be an injury, in and of itself. As explained by the Supreme Court in *Spokeo*, a plaintiff "could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*, 578 U.S. at 341 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)).

Plaintiffs claim they were deprived of their interest in "the legally established and mandated lake levels of Higgins Lake." (ECF No. 34, PageID.600.) This is not sufficient to establish a concrete harm.

Some "intangible" harms may be sufficiently concrete for purposes of standing. *Spokeo*, 578 U.S. at 340–41. For example, intangible harms are concrete if they are analogous to "traditional common law harms," or if they are "harms specified by the Constitution itself," such as "infringements on free speech or exercise of religion." *Merck v. Walmart, Inc.*, 114 F.4th 762, 773–74 (6th Cir. 2024) (citing *Spokeo*, 578 U.S. at 340–41). Additionally, "[c]ourts give Congress some deference in identifying intangible harms that 'meet minimum Article III

12

requirements' and can provide plaintiffs standing to sue in federal court." *Id.* (citing *Spokeo*, 578 U.S. at 341).

Here, Plaintiffs do not adequately explain how their intangible harm is concrete. First, Plaintiffs claim that they have alleged "a recognized constitutional injury" regarding an alleged lack of due process. (ECF No. 34, PageID.600.) However, a "bare procedural violation, divorced from any concrete harm," is not sufficient for standing. *Spokeo*, 578 U.S. at 341. Further, Plaintiffs argue, "[w]hile the County may disagree that such a 'protected interest' [in the lake levels of Higgins Lake] exists, it has been pled as existing . . . which must be deemed treated as true for purposes of this motion for jurisdictional purposes." (ECF No. 34, PageID.600.) But a determination of whether Plaintiffs sufficiently allege a concrete harm is a legal finding, not a factual assertion. As such, the Court has no obligation to deem those legal conclusions as true when reviewing Defendants' motion to dismiss. *See O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009) (stating that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a [Rule 12(b)(1)] motion to dismiss") (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

13

To the extent Plaintiffs claim there is a concrete harm—Public Act 112's effect on the "legally established and mandated lake levels of Higgins Lake" and Plaintiffs' "ability to exercise property rights in the same fashion that has long existed under Part 307"—the Court disagrees. (ECF No. 34, PageID.600.) Because Plaintiffs "must demonstrate standing . . . for each form of relief they seek," *TransUnion LLC*, 594 U.S. at 431, the Court will discuss concrete harm for all three forms of requested relief.

As to Plaintiffs' damages claim, Plaintiffs do not allege a past, concrete harm arising from the passage of Public Act 112 because the law took effect on April 2, 2025, over a month after the filing of Plaintiffs' amended complaint. (ECF No. 22; *see also* 2024 Mich. Legis. Serv. P.A. 112 (S.B. 662).)[2] Any allegation of past harm cannot support standing for damages because "[s]tanding is determined at the time the complaint is filed" and the alleged acts had not occurred at the time of the amended complaint. *Ohio Citizen Action*, 671 F.3d at 580.

---

[2] Plaintiffs' proposed second amended complaint was filed on March 7, 2025, and, as such, was also filed before Public Act 112 took effect. (ECF No. 27.)

14

Regarding Plaintiffs' request for declaratory and injunctive relief, Plaintiffs must allege "actual present harm or a significant possibility of future harm." *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) (quoting *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)). Past harm "does not entitle a plaintiff to seek injunctive or declaratory relief." *Id.* Plaintiffs may pursue declaratory and injunctive relief "so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 415.

Here, Plaintiffs do not allege an actual present harm or a significant possibility of future harm. Plaintiffs do not allege that Defendants, at the time of the amended complaint, are failing to maintain Higgins Lake at 1,154.11 feet. Additionally, while Plaintiffs plead that maintaining a lake level of 1,154.11 feet allows "local riparian property owners" to conduct certain activities, such as "install their private docks into the waters," "exercise the right to put out in a boat or on foot from upland property," "to go boating, swimming, water skiing, fishing, ice skating or sledding or to engage in other aquatic sports," (ECF No. 22, PageID.324), Plaintiffs do not set forth any facts indicating that their injuries are "particularized," or that the passage or drafting of Public Act 112

15

"affect[s] the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339. For example, Plaintiffs do not allege that they are interested in conducting these activities on Higgins Lake but will be prevented from doing so because of Public Act 112. The amended complaint does not allege that any Plaintiff "personally has suffered some actual or threatened injury" beyond the deprivation of "their legitimate claim of entitlement and/or property rights with no due process provided." (ECF No. 22, PageID.323.)

Plaintiffs have not established an injury in fact for each form of relief sought, as is required for standing.[3] As such, the Court does not have subject matter jurisdiction over this suit and the suit must be dismissed in its entirety.

---

[3] Even if the Court found that it had subject matter jurisdiction over Plaintiffs' declaratory-judgment count, it must also determine whether it is appropriate for the Court to exercise the discretionary jurisdiction conferred by the Declaratory Judgment Act, 28 U.S.C. § 2201. The Court assesses its discretionary jurisdiction based on the five-factor test established in *Grand Trunk W.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). Neither party addresses the *Grand Trunk* factors. (ECF No. 34, PageID.327.)

## III. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED. (ECF No. 32.) Because the Court does not have subject matter jurisdiction, this case is DISMISSED WITHOUT PREJUDICE.[4]

Because this case is dismissed without prejudice, the Court DENIES AS MOOT the Michigan Attorney General's motion to intervene. (ECF No. 25.) Plaintiffs' motion for leave to file a second amended complaint as to the Michigan Attorney General is denied as moot, and as to Roscommon County and Schepke is denied as futile.[5] (ECF No. 27.)

---

[4] Generally, Rule 12(b)(1) dismissals are not dismissals on the merits because "if a court does not have jurisdiction, ipso facto, it cannot address the merits of a case." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 917 (6th Cir. 1986).

[5] Plaintiffs' proposed second amended complaint (ECF No. 27) does not cure the jurisdictional issues set forth in this opinion and is futile. The proposed second amended complaint "makes no substantive changes to the Section 1983 claim made against Defendants Roscommon County and its delegated authority but adds Counts II, III, IV, and V" against the State of Michigan because Plaintiffs believe the State of Michigan has waived its sovereign immunity by virtue of its intervention pursuant to 28 U.S.C. § 2403(b), and believe they must assert claims against the State of Michigan for Article III jurisdiction. (ECF No. 27, PageID.388; *see also* ECF No. 26, PageID.378–379.)

Because the Court does not have subject matter jurisdiction over this suit, it may not grant the Michigan Attorney General's motion to intervene pursuant to 28 U.S.C. § 2403(b). (ECF No. 25, PageID.342.) As such, there is no basis at this time for Plaintiffs to assert claims against the Michigan Attorney General or the State of Michigan. Further, like the amended complaint, the proposed second amended

IT IS SO ORDERED.

Dated: June 23, 2025              s/Judith E. Levy
Ann Arbor, Michigan         JUDITH E. LEVY
                                               United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 23, 2025.

                                           s/Kourtney Collins
                                           KOURTNEY COLLINS
                                           Case Manager

---

complaint fails to set forth an injury-in-fact suffered or to be suffered by each Plaintiff, which is required for Article III standing.